# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 10, 2022  Decided February 3, 2023

No. 21-5057

PAYPAL, INC.,
APPELLEE

v.

CONSUMER FINANCIAL PROTECTION BUREAU AND ROHIT CHOPRA, IN HIS OFFICIAL CAPACITY AS DIRECTOR, CONSUMER FINANCIAL PROTECTION BUREAU,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-03700)

*Christopher Deal*, Senior Counsel, Consumer Financial Protection Bureau, argued the cause for appellants. With him on the briefs were *Kristin Bateman*, Acting Assistant General Counsel, and *Julia Szybala*, Senior Counsel.

*Kannon K. Shanmugam* argued the cause for appellee. With him on the brief were *Kelly P. Dunbar*, *William T. Marks*, and *Brian M. Lipshutz*.

Before: SRINIVASAN, *Chief Judge*, PILLARD and RAO, *Circuit Judges*.

2

Opinion for the Court filed by *Circuit Judge* RAO.

RAO, *Circuit Judge*: The Bureau of Consumer Financial Protection ("the CFPB") promulgated the Prepaid Rule, which regulates digital wallets and other prepaid accounts. As relevant here, the Rule requires financial institutions to make certain disclosures by using model language or other "substantially similar" wording. Challenging the Rule on statutory, administrative, and constitutional grounds, PayPal sued the CFPB. The district court reached only PayPal's statutory claims, vacating part of the Rule because it mandated a "model clause" in violation of the Electronic Fund Transfer Act ("EFTA").

In this case, PayPal and the CFPB proceed on the assumption that EFTA prohibits mandatory model clauses and so we consider only whether the Prepaid Rule mandates such a clause. Answering that narrow question, we conclude EFTA's reference to "model clause" means specific, copiable language—not content and formatting. Because the Prepaid Rule does not require PayPal to use specific language, it does not mandate a "model clause." We therefore reverse the district court and remand for further consideration of PayPal's claims.

I.

A.

Recognizing the "potential for substantial benefits" from electronic systems for transferring money, Congress enacted EFTA to clarify and define "the rights and liabilities of consumers, financial institutions, and intermediaries in electronic fund transfers." Pub. L. No. 95-630, tit. XX, § 2001, 92 Stat. 3641, 3728 (codified at 15 U.S.C. § 1693). EFTA requires financial institutions to disclose specific "terms and

3

conditions" of electronic fund transfers "at the time the consumer contracts for an electronic fund transfer service." 15 U.S.C. § 1693c(a); *id*. § 1693c(a)(1)–(10). Where applicable, such disclosures are mandatory and must be made using "readily understandable language." *Id*. § 1693c(a).

As part of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Congress created the CFPB and transferred to it the authority to regulate disclosures under EFTA. Consumer Financial Protection Act of 2010, Pub. L. No. 111-203, tit. X, §§ 1002(5), (15), 1011(a), 1032(a), 1084, 124 Stat. 1955, 1956, 1957–58, 1964, 2006–07, 2081–82. In addition, Dodd-Frank permits the CFPB to prescribe rules to ensure the terms of consumer financial products and services are "fully, accurately, and effectively disclosed to consumers." 12 U.S.C. § 5532(a).

Both EFTA and Dodd-Frank provide financial institutions with a safe harbor from liability in certain circumstances. EFTA obligates the CFPB to "issue model clauses" using "readily understandable language" to "facilitate compliance with the disclosure requirements." 15 U.S.C. § 1693b(b). These model clauses can shield an institution from civil and criminal liability for "any failure to make [a] disclosure in [the] proper form." *Id*. § 1693m(d)(2). Similarly, under Dodd-Frank the CFPB may issue "model form[s]" that can provide a safe harbor for compliance with disclosure requirements. 12 U.S.C. § 5532(b)(1), (d). An institution's use of model clauses and forms is "optional." 15 U.S.C. § 1693b(b) (model clauses); 12 U.S.C. § 5532(b)(1) (model forms).

B.

The CFPB promulgated a regulation addressing consumer protections in "prepaid accounts." Prepaid Accounts Under the

4

Electronic Fund Transfer Act (Regulation E) and the Truth In Lending Act (Regulation Z) ("Prepaid Rule"), 81 Fed. Reg. 83,934, 83,934 (Nov. 22, 2016) (codified at 12 C.F.R. parts 1005, 1026). As relevant here, prepaid accounts allow consumers to store money in a digital wallet that enables financial transactions online or person-to-person. *See generally* Prepaid Rule, 81 Fed. Reg. at 83,934–43; *see also* 12 C.F.R. § 1005.2(b)(3)(i)(A)–(D) (defining "prepaid account").

The Prepaid Rule requires account providers to disclose certain information before a consumer acquires an account and begins transacting. These disclosures come in two forms: a "long form disclosure," which includes all fees that could be imposed in connection with a prepaid account; and a "short form disclosure," which includes only a subset of that information. 12 C.F.R. § 1005.18(b)(2), (4).

PayPal's challenge concerns only the short form disclosures, which must include a prepaid account's "most important fees." Prepaid Rule, 81 Fed. Reg. at 83,934. Providers must disclose these "static fees," which apply to "all prepaid account programs, even if such fees are $0 or if they relate to features not offered by a particular program." *Id*.; *accord* 12 C.F.R. pt. 1005, supp. I, cmt. 18(b)(2)-1.[1] Static fees include the periodic fee charged for holding the account, transaction fees, ATM withdrawal fees, the fee for reloading cash into the account, ATM balance inquiry fees, customer

---

[1] The CFPB's "official interpretation" of the Prepaid Rule says static fees must be listed regardless of applicability. *See* 12 C.F.R. pt. 1005, supp. I, cmt. 18(b)(2)-1. The parties do not dispute that all static fees must be listed under the Rule, so we do not address PayPal's argument that the CFPB's interpretation is inconsistent with the regulation.

5

service fees, and fees for inactivity. 12 C.F.R. § 1005.18(b)(2)(i)–(ix). If a fee on the short form may fluctuate, the Rule requires the highest amount to be listed with a symbol, such as an asterisk, linking to a statement explaining that a lower fee could apply depending on how the product is used. *Id.* § 1005.18(b)(3)(i).

The general structure of the disclosure requirements is the same. For each static fee, the Prepaid Rule suggests a specific word or phrase to describe the fee and directs providers to use that language or something "substantially similar." For example, a "Per purchase fee" must be disclosed "using the term 'Per purchase' or a substantially similar term." *Id.* § 1005.18(b)(2)(ii). An "Inactivity fee" must be disclosed "using the term 'Inactivity' or a substantially similar term." *Id.* § 1005.18(b)(2)(vii).

The Prepaid Rule also imposes formatting requirements. These include how the disclosures must be structured, where each fee must appear in relation to the others, and the font size and emphasis given to each fee. *See, e.g.*, *id*. § 1005.18(b)(6)(iii)(A), (7)(i)(A), (7)(ii)(B)(1)–(3). The Rule illustrates how the formatting requirements could be implemented. Static fees are listed above the bolded line, and additional fees are listed below it.

6

| Monthly fee | Per purchase | ATM withdrawal | Cash reload |
|---|---|---|---|
| **$5.99*** | **$0** | **$0** in-network<br>**$1.99** out-of-network | **$3.99*** |

| | |
|---|---|
| ATM balance inquiry (in-network or out-of-network) | $0 or $0.50 |
| Customer service (automated or live agent) | $0 or $0.50* per call |
| Inactivity (after 12 months with no transactions) | $1.00 per month |

**We charge 4 other types of fees.** Here are some of them:

| | |
|---|---|
| [Additional fee type] | $1.00* |
| [Additional fee type] | $3.00 |

* This fee can be lower depending on how and where this card is used.

**No overdraft/credit feature.**
Not FDIC insured. Register your card for other protections.

For general information about prepaid accounts, visit *cfpb.gov/prepaid*.
Find details and conditions for all fees and services inside the package, or call **800-234-5678** or visit *xyz.com/prepaid*.

12 C.F.R. pt. 1005, app. A-10(d).

C.

PayPal is one of the largest providers of digital wallets. PayPal's digital wallets allow users to store funds for later use, a capability that sweeps the wallets into the ambit of the Prepaid Rule. PayPal sued the CFPB, challenging the Rule under the Administrative Procedure Act ("APA") and the Constitution. PayPal first alleged the Prepaid Rule exceeded the CFPB's statutory authority because the agency effectively mandated the adoption of a model clause in contravention of EFTA, which authorizes only "optional" clauses. PayPal also argued the Prepaid Rule was arbitrary and capricious as applied

7

to its service, because unlike other financial products, PayPal does not generally charge fees for using its financial products and only a small percentage of digital wallet transactions use stored funds. The Prepaid Rule therefore failed to account for the differences between PayPal and other prepaid account providers, whose services are closer substitutes for traditional checking accounts. Moreover, by requiring PayPal to list even irrelevant static fees, as well as the highest value that those fees could reach, the Rule "risk[ed] consumer confusion and impose[d] substantial cost without a commensurate consumer benefit." PayPal also argued that the Rule's cost-benefit analysis was arbitrary and capricious and that the Rule violated PayPal's First Amendment rights.

The district court granted summary judgment for PayPal, holding the Prepaid Rule's short form disclosure requirements exceeded the CFPB's statutory authority under EFTA.[2] *PayPal, Inc. v. CFPB*, 512 F. Supp. 3d 1, 9 (D.D.C. 2020). The court explained that while EFTA requires the disclosure of certain "'terms and conditions of electronic fund transfers,' … it does *not* require that providers adhere to a specific form for these disclosures." *Id*. at 7 (quoting 15 U.S.C. § 1693c(a)(4)). Instead, the CFPB can only "'issue *model* clauses for *optional* use by financial institutions'" because "the plain text [of EFTA] does not permit the Bureau to issue *mandatory* clauses." *Id.* (quoting 15 U.S.C. § 1693b(b)). The court considered whether the Prepaid Rule's short form disclosure requirements "exceed[] the Bureau's statutory authority by effectively creating mandatory disclosure

---

[2] The district court also concluded the Prepaid Rule exceeded the CFPB's authority under the Truth In Lending Act. *PayPal, Inc. v. CFPB*, 512 F. Supp. 3d 1, 12 (D.D.C. 2020). The CFPB does not appeal that holding.

8

clauses." *Id.* at 9. "Undoubtedly so!" the court exclaimed, finding the Rule's requirements mandatory because they "provide[] the specific form, structure, and contents of disclosures that providers *must* use." *Id*. The court emphasized the CFPB lacked authority under either EFTA or Dodd-Frank to issue mandatory model clauses. The court vacated the Prepaid Rule "to the extent that the short-form disclosure requirement provides [for] mandatory disclosure" and declined to reach the remainder of PayPal's claims. *Id*. at 12. The CFPB appealed.

II.

The legal question presented on appeal is a narrow one. The CFPB does not dispute, for the purposes of this case, that it lacks the statutory authority to issue mandatory model clauses. Oral Arg. Tr. 9:3–10. Rather, the CFPB maintains the Prepaid Rule does not in fact impose mandatory model clauses. In response, PayPal argues the Rule effectively imposes mandatory model clauses for which the CFPB has no authority under either EFTA or Dodd-Frank.

In light of the parties' arguments and the district court's decision, we begin by considering whether the Prepaid Rule imposes mandatory model clauses. We first consider the text and structure of EFTA, which establishes that the term "model clause" means specific, copiable language—not content or formatting requirements. Applying this definition, we conclude the Prepaid Rule does not impose mandatory model clauses.[3]

---

[3] In its briefing before us, PayPal argues only that the CFPB lacks statutory authority to impose formatting and content requirements because these requirements constitute mandatory model clauses. This opinion therefore does not address the district court's

9

A.

"Model clause" is not defined in EFTA, so we look to the meaning of the term in its statutory context. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). In EFTA, "model clause" has a particularized legal meaning. Model clauses must be designed "to facilitate compliance with the disclosure requirements of section 1693c" and "to aid consumers in understanding the rights and responsibilities of participants in electronic fund transfers." 15 U.S.C. § 1693b(b). The model clauses serve important legal functions—to ensure financial institutions are complying with their statutory disclosure requirements and to help protect the legal rights of consumers who make electronic fund transfers. In addition, a model clause provides a safe harbor from liability for financial institutions. *Id*. § 1693m(d)(2). Within EFTA, a "model clause" serves to disclose and protect legal rights and therefore the term has a distinct legal meaning.

In legal parlance, "model clause" has a particular meaning. A "model" legal instrument usually refers to text that is specific enough either to be adopted in full or adapted as needed. For example, the "Model Rules of Professional Conduct" are a uniform set of "ethical guidelines for lawyers" that can be "adopted as law, sometimes with modifications." *Model Rules of Professional Conduct*, BLACK'S LAW DICTIONARY (11th ed. 2019). The "Model Penal Code" is "[a] criminal code drafted and proposed by the American Law Institute" that is "used as the basis for criminal-law revision by many states." *Model Penal Code*, BLACK'S LAW DICTIONARY (11th ed. 2019). And a "model act" is a bill that is "proposed as guideline legislation for the states to borrow from or adapt to suit their individual

---

conclusion that the CFPB lacks statutory authority to impose mandatory clauses. *See PayPal*, 512 F. Supp. 3d at 7–9.

10

needs." *Model Act*, BLACK'S LAW DICTIONARY (11th ed. 2019). Model legal documents refer to specific, copiable language that lawyers, legislators, and contracting parties can adopt in full or adapt as needed.

When Congress used the phrase "model clause" in the context of EFTA's legal liabilities, obligations, and protections, it adopted the legal understanding of the term. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 73 (2012) ("[W]hen the law is the subject, ordinary legal meaning is to be expected, which often differs from common meaning."). EFTA provides that financial institutions must disclose "terms and conditions … in readily understandable language." 15 U.S.C. § 1693c(a). Mirroring this requirement, the CFPB must "issue model clauses … by utilizing readily understandable language." *Id*. § 1693b(b). Financial institutions are protected against liability if they "utilize[] an appropriate model clause." *Id*. § 1693m(d)(2). Read together, these provisions demonstrate that a "model clause" is a particular set of words, namely "readily understandable language," that prepaid account providers can adopt to satisfy their disclosure obligations and to benefit from the Act's safe-harbor provision.[4]

---

[4] Citing *City of Arlington v. FCC*, 569 U.S. 290 (2013), the CFPB maintains we should defer to its "interpretation of the scope of its rulemaking authority" because "Congress has not directly spoken to the precise question [of] whether the Bureau may regulate the content and formatting of disclosures." We reject that invitation. The meaning of "model clause" is clear from the statutory text and context, and "deference does not apply where the statute is clear." *Johnson v. Guzman Chavez,* 141 S. Ct. 2271, 2291 n.9 (2021).

11

B.

Assuming the CFPB lacks authority to impose mandatory model clauses and applying the above understanding of "model clause," we hold the Prepaid Rule did not mandate model clauses.

The Prepaid Rule requires financial providers to disclose certain fees by using a suggested phrase "or a substantially similar term." For example, providers "shall provide a disclosure" for a "[c]ash reload fee … using the term 'Cash reload' or a substantially similar term." 12 C.F.R. § 1005.18(b)(2)(iv). They must also disclose a "periodic fee … using the term 'Monthly fee,' 'Annual fee,' or a substantially similar term." *Id*. § 1005.18(b)(2)(i). In each instance, the Rule suggests the use of a particular word or phrase, but also provides an option to use terms that are "substantially similar." The CFPB interprets the Prepaid Rule to require the disclosure of certain enumerated fees. *See* 12 C.F.R. pt. 1005, supp. I, cmt. 18(b)(2)-1. But the CFPB has not mandated that financial providers use specific, copiable language to describe those fees. Rather, providers can choose to use the CFPB's model clauses or they can use other language that is "substantially similar." Because the Prepaid Rule does not mandate the use of specific language, the CFPB has not mandated a "model clause" in contravention of EFTA.

C.

PayPal maintains the Prepaid Rule mandates a "model clause," but its arguments fail to account for EFTA's text and structure. First, PayPal contends the Rule's allowance for "substantially similar language" unduly narrows the field of usable language and effectively mandates a model clause. We recognize that, as a practical matter, the range of permissible

12

wording available to satisfy a short form disclosure requirement may be quite limited. There are, after all, only so many ways to describe the fee charged for account inactivity or the frequency with which a fee is charged. The limited range of permissible wording, however, stems not from the model clauses, but from the legally required disclosures. EFTA requires financial providers to make certain disclosures of fees and terms, disclosures that are further specified in the Rule. As PayPal concedes, "the Bureau can require financial institutions to disclose certain information." The specific statutory and regulatory disclosure requirements may at times constrain the range of disclosure language, but that does not convert optional model clauses into mandatory ones.

Second, although PayPal does not offer a clear definition of "model clause," it assumes that model clauses include some combination of specific wording, content, and formatting requirements. PayPal also relies on the district court's conclusion that the CFPB's model clauses are mandatory because they "provide[] the specific form, structure, and contents of disclosures that providers *must* use." *PayPal*, 512 F. Supp. 3d at 9. Because the Prepaid Rule imposes certain top-line requirements, such as particular content and formatting obligations, PayPal maintains the Rule impermissibly mandates a model clause.

In EFTA, however, "model clause" means specific copiable language. PayPal's interpretation of model clause to include content and formatting requirements cannot be reconciled with the statute. With respect to the content of model clauses, specific information "shall be disclosed." 15 U.S.C. § 1693c(a). And separately, the CFPB must issue "model clauses" suggesting language providers can use to satisfy the disclosure requirements. *Id*. § 1693b(b). The model

13

clauses must be designed to "facilitate compliance" with "disclosure requirements." *Id*. EFTA makes clear that model clauses and disclosure requirements are discrete terms. Disclosure requirements regulate *content*, while model clauses suggest the *language* that may be used for the disclosure. The fact the Prepaid Rule requires the disclosure of certain content does not, standing alone, mandate a model clause.

Formatting is similarly not part of a "model clause." As we have already explained, a model clause, in legal parlance, does not ordinarily include formatting requirements. For example, a judge could copy verbatim the words of a model jury instruction, but this ordinarily would not include any particular typeface, indentation, or structure. Specific, copiable language is the essential element of a model clause. The Prepaid Rule mandates certain formatting, but such requirements fall outside the ambit of a "model clause."

Other statutory provisions underscore the limits of a model clause. Congress frequently provides for formatting requirements as part of the definition of a "model form." For example, in the private education loan context, the CFPB must develop "model forms" to aid regulatory compliance, and those forms must, among other things, have "a clear format and design" and "use an easily readable type font." *Id*. § 1638(e)(5). Dodd-Frank defines "model form" to include "a clear format and design, such as an easily readable type font" and "plain language comprehensible to consumers." 12 U.S.C. § 5532(b)(2). In some instances, Congress directed the CFPB to issue both model clauses and model forms. *See id*. § 4308(b)(1) (providing in the Truth in Savings Act that the CFPB "shall publish model forms and clauses"). By contrast, in EFTA Congress simply required the CFPB to issue "model clauses" and made no reference to "model form[s]."

14

PayPal maintains the Prepaid Rule mandates model clauses because it "dictates the organization of the short-form disclosure clauses in painstaking detail, down to the pixel." In Dodd-Frank and other statutes, such formatting requirements are often included as part of the definition of a "model form," suggesting that they are not part of a typical model clause. Because PayPal's reading would collapse the distinction between model clauses and forms, we decline to adopt it.

\* \* \*

Addressing the narrow issue before us, we conclude the CFPB's Prepaid Rule does not mandate a "model clause" in contravention of EFTA. That the Rule's content and formatting requirements do not fall within the meaning of "model clause" does not necessarily mean the CFPB can impose whatever content and formatting requirements it chooses. On remand, the district court may consider PayPal's other challenges to the Rule, including the APA and constitutional claims, which remain to be addressed.

For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

*So ordered*.